ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2006 APR 19  PM 1: 49

CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

RICKY L. FAVORS,            )
                            )
      Plaintiff,            )
                            )
v.                          )  CV 605-089
                            )
GLENN RICH, Warden, et al., )
                            )
      Defendants.           )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The captioned matter, brought pursuant to 42 U.S.C. § 1983, is before the Court on Defendants' motions to dismiss (doc. nos. 3, 5, 7, 8, 10, 28), which the Court has converted to motions for summary judgment. (See doc. no. 11). Plaintiff opposes the motions. (Doc. nos. 15, 33). Defendants also request that discovery in this case be stayed pending a resolution of their motions for summary judgment. (Doc. no. 37). Plaintiff also opposes this motion. (Doc. no. 40).

For the reasons below, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment be **GRANTED**, that Defendants' motion to stay (doc. no. 37) be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

## I. BACKGROUND

**A.     Plaintiff's Complaint**

In his complaint, filed on August 16, 2005, Plaintiff avers that, while he was an inmate at Rogers State Prison ("Rogers"), in Reidsville, Georgia, Defendants Lieutenant Langston ("Langston"), Sergeant Burns ("Burns"), Office Hunter ("Hunter"), Officer Osborn ("Osborn"), and Officer Byrd ("Byrd") beat him on December 9, 2004. (Doc. no. 1, p. 2). Plaintiff also claims that he was beaten again on March 31, 2005, and that Defendants Byrd, Burns, Osborn, Hunter, and Officer Lewis ("Lewis") participated. (Id. at 4). Plaintiff also maintains that Defendants Deputy Warden R.D. Collins ("Collins") and Warden Glenn Rich ("Rich") allegedly condoned this behavior. (Id. at 6-8). Finally, Plaintiff states, in conclusory fashion, that he has exhausted administrative remedies. (Id. at 2).

**B.     Defendants' Arguments**

On the other hand, Defendants argue that Plaintiff failed to file any grievance regarding the use-of-force incidents alleged in the complaint, and thus that Plaintiff failed to properly exhaust his administrative remedies prior to filing suit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). Accordingly, Defendants argue that the instant suit should be dismissed. In support of this argument, Defendants have provided two affidavits from Ms. Sarah Draper, Manager of the Office of Investigations and Compliance for the Georgia Department of Corrections. See Draper Aff. I (attached to doc. no. 4) & Draper Aff. II (attached to doc. no. 18).

Ms. Draper provides that, pursuant to Georgia Department of Corrections Standard Operating Procedure ("SOP") IIB05-0001 § VI, Rogers has maintained an administrative

grievance process that is available to all inmates. See Draper Aff. I, ¶¶ 6-10. Ms. Draper also explains that a grievance may be filed out-of-time for good cause. Id. ¶¶ 14-15; see also Draper Aff. II, ¶ 16. Nevertheless, according to Ms. Draper, Plaintiff did not pursue any administrative remedy regarding the beatings alleged in the complaint. See Draper Aff. I, ¶¶ 12-13.

Ms. Draper also provides that, although Plaintiff did not file a grievance regarding the incidents alleged in his complaint, he has filed more than fifty grievances while incarcerated. See Draper Aff. II, ¶14. Additionally, Ms. Draper states that Plaintiff was transferred to another prison on April 12, 2005. Id. ¶ 15. Plaintiff's grievance history shows that, since his April 2005 transfer, he has filed four grievances. Defs.' Ex. 2 (attached to doc. no. 18).

## C.  Plaintiff's Response

In response, Plaintiff avers that following the December 2004 beating, he was kept in "lockdown" for four months and did not have access to grievance forms. (Doc. no. 15, p. 2). Strangely, Plaintiff also contends that he did file an informal grievance on December 13, 2004, but that he did not receive a response. (Id.). Plaintiff also maintains that he filed an informal grievance following the March 2005 beating. (Id.). According to Plaintiff, he also never received a response from this grievance. (Id. at 3). Plaintiff argues that he did not file formal grievances regarding the alleged beatings because it was "common knowledge" at Rogers that resort to the administrative process would be met with violent reprisals. (Id. at 4-5). Thus, Plaintiff chose not to file a formal grievance because he was afraid. (Id. at 5). Consequently, Plaintiff argues that the administrative process was not really "available" to

3

him, and he cannot be deemed to have failed to exhaust administrative remedies under the PLRA. (Id. at 5).

In support of these allegations, Plaintiff proffers: 1) an informal grievance form allegedly filled out by Plaintiff on December 15, 2004, which lacks a receipt showing that it was ever actually processed, see Pl.'s Ex. A; 2) an informal grievance form receipt showing that Plaintiff filed an informal grievance in May 2005, see Pl.'s Ex. B; 3) two affidavits from Plaintiff describing the alleged beatings and his informal grievances, including an alleged grievance filed after his transfer to Valdosta State Prison ("VSP"), in Valdosta, Georgia, see Pl.'s Exs. C & D; 4) an affidavit from former corrections officer Tommy Cardell describing incidents of inmate abuse at Rogers, prison counselors' attempts to discourage and prevent inmates from filing grievances, and Defendants' violent reprisals when inmates resorted to the administrative process, see Pl.'s Ex. E; and 5) a statement from inmate Gregory Bryant ("Bryant") describing Defendants' retaliation against him for filing grievances. See Pl.'s Ex. F.

### D. The Administrative Grievance Process

Therefore, the key issue in this case is whether Plaintiff has complied with § 1997e(a). Before assessing this question, it will be helpful to explain the grievance procedure used in the Georgia state prison system. Under SOP IIB05-0001 § VI(B), once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal

grievance. SOP IIB05-0001 § VI(B)(5). As pointed out by Ms. Draper's affidavits, the timeliness requirements of the administrative process may be waived upon a showing of good cause. See id § VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within ten (10) calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id § VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five (5) business days of his receipt of the written response to his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has thirty (30) calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five (5) business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has ninety (90) calendar days after receipt of the grievance appeal to respond. Id. § VI(D)(2),(5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. Id.

Having clarified the factual background of the case, the Court turns to the merits of the motions for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Applicable substantive law identifies which facts are material in a given case.[1] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes

---

[1] The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Plaintiff's Failure to Exhaust Administrative Remedies**

As the exhaustion of administrative remedies is a prerequisite to filing suit under the PLRA, exhaustion is a threshold inquiry. The PLRA's mandatory exhaustion requirement applies to all federal claims brought by any inmate. Porter v. Nussle, 534 U.S. 516, 520 (2002). Furthermore, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998). Simply put, if an administrative remedy is "available," it must be exhausted. 42 U.S.C. § 1997e(a).

To properly exhaust his claims, an inmate must satisfy any and all procedural requisites, including "administrative deadlines." Johnson v. Meadows, 418 F.3d 1152, 1154 (11th Cir. 2005), *petition for cert. filed* (U.S. Sept. 8, 2005)(No. 05-6336). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Id. at 1159. Put plainly, "a Georgia prisoner 'must timely meet the deadlines or the good cause standard of Georgia's

7

administrative grievance procedures.'" Salas v. Tillman, No. 05-10399, 2006 WL 122426, at *2 (11th Cir. Jan. 17, 2006) (citing Johnson, 418 F.3d at 1155); see also Harper v. Jenkin, 179 F.3d 1311, 1312 (11th Cir. 1999)("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies."). Similarly, in order to exhaust all available administrative remedies, an inmate must pursue an administrative appeal if his grievance is denied. Moore v. Smith, 18 F. Supp.2d 1360, 1362 (N.D. Ga. 1998).

Here, Plaintiff maintains that he pursued informal grievances while incarcerated at Rogers, and again at VSP. Plaintiff's evidence in this regard is scant. He has produced an informal grievance form dated December 15, 2004, which does not include a receipt showing it was ever submitted to prison officials or processed. He has also provided a receipt showing that he filed an informal grievance in May 2005 which was processed. There is nothing to indicate the content of the alleged May 2005 grievance. Plaintiff submits no other documentary evidence regarding his attempts to exhaust administrative remedies. Simply put, neither of these pieces of evidence demonstrates that Plaintiff actually *exhausted* the administrative process, as described *supra*.

Rather, Plaintiff avers that he did not take further action out of fear of violent reprisal, and because he did not receive responses regarding his informal grievances. In this instance, Plaintiff's arguments must fail. To begin, the Court is not persuaded by Plaintiff's contention that "general knowledge of [a] pattern and practice of brutally retaliating against inmates who file grievances" renders administrative remedies "practically unavailable." (Doc. no. 15, p. 5). To accept such an argument would eviscerate the exhaustion

8

requirement.

First, to the extent Plaintiff raises a veiled argument that the grievance procedure at Rogers was inadequate or that resort to administrative remedy would have been futile, the Eleventh Circuit has foreclosed any such argument. Alexander, 159 F.3d at 1325-26. Moreover, in Porter, cited *supra*, the Supreme Court held that the PLRA's exhaustion requirement applied even to a prisoner alleging that the use of excessive force was a "prevailing circumstance" at his place of incarceration. 534 U.S. at 532. Justice Ginsberg, writing for a unanimous Court, explained that a prisoner's allegations of "a prolonged and sustained pattern of harassment and intimidation by corrections officers," cannot serve to remove his case from the ambit of § 1997e(a). Id. at 530. Thus, the undersigned is not persuaded that Plaintiff's alleged "general knowledge" of incidents of excessive force or retaliation at Rogers served to render administrative remedies unavailable. See Boyd v. Corr. Corp. of Am., 380 F.3d 989, 998 (6th Cir. 2004)("nonspecific allegations of fear" and "subjective feeling[s] of futility" no excuse for failure to exhaust administrative remedies).

More importantly, although it is arguable that threats of violent reprisal can, under certain circumstances, render administrative remedies "unavailable" or otherwise justify an inmate's failure to pursue them, see, e.g., Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004), the Court is not persuaded that the instant case presents any such circumstances.[2]

---

[2] More generally, courts have held that prison officials may, as a result of their own conduct, become equitably estopped from relying upon § 1997e(a). See, e.g., Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004)(*per curiam*); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001); Wright v. Hollingsworth, 260 F.3d 357, 358 n.2 (5th Cir. 2001). Taken together, these cases stand for the simple proposition that prison officials should not benefit from conduct which inhibits an inmate from properly exhausting administrative remedies. That principle of law does not alter the key

Plaintiff does not actually state in his affidavits that Defendants ever threatened him or that he was too afraid to file a formal grievance. Furthermore, Plaintiff was transferred to VSP in April 2005. Thus, any fear of reprisal from Defendants cannot justify Plaintiff's failure to seek leave to file an out-of-time grievance following his transfer. Simply put, Plaintiff's transfer negates his argument that he failed to file a grievance because he was afraid Defendants would retaliate.

Of course, Plaintiff also avers that officials at Rogers and VSP refused to respond to his informal grievances. Initially, the believability of Plaintiff's averment is eroded by the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants did exhaust administrative remedies regarding their claims. See, e.g., Hooks v. Rich, CV 605-065 (S.D. Ga. July 13, 2005). In addition, Plaintiff's grievance history shows that he has pursued four grievances since his transfer, two of which proceeded through the administrative appeal process before being denied. See Defs.' Ex. 2. In light of the fact that Plaintiff has been able to avail himself of the administrative process since his transfer from Rogers, Plaintiff's notion that officials at VSP would act to prevent him from completing the administrative process with regard to alleged incidents of excessive force which occurred at another prison seems farfetched.

Furthermore, Plaintiff is no longer incarcerated at VSP. At the time Plaintiff

---

inquiry--whether administrative remedies were actually "available" to Plaintiff prior to the filing of the instant suit. Of course, to the extent Plaintiff is arguing that Defendants should be estopped from relying on § 1997e(a) because of their own misconduct, it is his burden to establish his entitlement to this equitable remedy. See Lewis v. Washington, 300 F.3d 829, 834.(7th Cir. 2002).

completed his aforementioned affidavits in July and October 2005, Plaintiff was incarcerated at Coffee Correctional Facility ("CCF") in Nicholls, Georgia. See Pl.'s Exs. C & D. Plaintiff has not alleged that officials at CCF have prevented him from pursuing an out-of-time grievance regarding the alleged events at Rogers.

Accordingly, the Court rejects Plaintiff's uncorroborated and self-serving contention that administrative remedies are not available. Plaintiff's accusation simply lacks credibility. The Court is aware that, as a general rule, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003). Nevertheless,

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson, 477 U.S. at 252, and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, in the instant case, where Plaintiff relies heavily upon his own vague, self-serving, and contradictory allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555.

Of note, the Honorable B. Avant Edenfield, United States District Judge for the Southern District of Georgia (and the presiding Judge in this case) recently rejected

Plaintiff's argument in two strikingly similar cases against Defendants, one of which was brought by inmate Bryant. See Priester v. Rich, CV 605-071, doc. no. 35, *adopted by* doc. no. 41 (S.D. Ga. Apr. 3, 2006); Bryant v. Rich, CV 605-064, doc. no. 38, *adopted by* doc. no. 51 (S.D. Ga. Jan. 23, 2006)(notice of appeal filed Feb. 9, 2006). In Priester, Judge Edenfield explained:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

CV 605-071, doc. no. 41, pp. 6-7.

In sum, the Court properly dispenses with Plaintiff's incredible assertions at the summary judgment stage. Plaintiff's resort to administrative remedies since his transfer from Rogers demonstrates that administrative remedies are in fact available to Plaintiff. Simply put, the Court concludes that Plaintiff has failed to exhaust available administrative remedies with regard to any of his claims against Defendants. Accordingly, Defendants are entitled to summary judgment.[3]

---

[3] The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.

That said, the Court declines to recommend that the instant case be dismissed with prejudice. Cf. Johnson, 418 F.3d at 1157 (quoting Marsh v. Jones, 53 F.3d 707, 710 (5th Cir. 1995)) ("[w]ithout the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one"). It is the longstanding practice of the Court to dismiss cases such as this one without prejudice, in order that the prisoner plaintiff may attempt to properly exhaust administrative remedies. See, e.g., CV 605-064, doc. no. 51. Defendants have not requested that Plaintiff's case be dismissed with prejudice. Thus, although it is at least arguable that the Court has authority to recommend the dismissal of Plaintiff's claims with prejudice for failure to exhaust administrative remedies, the Court determines that it would not be appropriate to do so at this time.

### III. CONCLUSION

For the above reasons, the Court **REPORTS** and **RECOMMENDS** that the motions for summary judgment (doc. nos. 3, 5, 7, 8, 10, 28) be **GRANTED**, that Defendants' motion to stay (doc. no. 37) be **DENIED** as **MOOT**, that Plaintiff's case be **DISMISSED** without prejudice for failure to exhaust administrative remedies, that an appropriate **FINAL JUDGMENT** be entered in favor of Defendants, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 19th day of April, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE