IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| RICKY FAVORS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 605-089 |
| | ) |
| GLENN RICH, Warden, et al., | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

After a careful, *de novo* review of the file, the Court concurs with the Magistrate Judge's ("MJ") Report and Recommendation to which objections have been filed. In the instant case, Plaintiff avers that, while he was incarcerated at Rogers State Prison ("Rogers") in Reidsville, Georgia,[1] he was brutally beaten on March 31, 2005 and on December 9, 2004. The MJ recommended that Defendants be granted summary judgment and that this case be dismissed without prejudice due to Plaintiff's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Doc. no. 47.

In his objections, Plaintiff contends that the threat of violent retribution at Rogers rendered administrative remedies "practically unavailable." Doc. no. 51, p. 2. In short, Plaintiff avers that he was too afraid to pursue administrative remedies. Plaintiff also maintains that he attempted to exhaust administrative remedies, but prison officials at Rogers and later at Valdosta State Prison ("VSP") refused to respond to his informal grievances, thus

---

[1] Plaintiff is now incarcerated at Autry State Prison in Pelham, Georgia.

rendering administrative remedies "unavailable." Id. at 4-5.

In reaching a contrary conclusion, the MJ relied upon: 1) Defendants' evidence that an administrative grievance process is generally available to inmates at Rogers and that Plaintiff has pursued more than fifty grievances during his incarceration within the Georgia state prison system, 2) the fact that Plaintiff was transferred to VSP in April 2005,[2] 3) the fact that Plaintiff had pursued four grievances since his transfer away from Rogers, two of which proceeded through the administrative appeal process before being denied, 4) the general lack of evidence, outside Plaintiff's own self-serving allegations, to support Plaintiff's claim that he was prevented from exhausting administrative remedies regarding the alleged beatings, and 5) the fact that other inmates at Rogers who have recently brought excessive force claims against Defendants did exhaust administrative remedies before filing suit. Doc. no. 47, pp. 2-3, 8-9. Based on this evidence, the MJ disbelieved Plaintiff's claim that he was prevented from pursuing administrative remedies, and noted that fear of retaliation at Rogers could not explain Plaintiff's failure to file an out-of-time grievance after his transfer.

In support of his objections, Plaintiff relies upon two affidavits in which he provides details regarding the alleged beatings and two informal grievances he allegedly filed, one at Rogers and the other at VSP. Pl.'s Exs. C-D. In further support of these contentions, Plaintiff has provided: 1) an informal grievance form allegedly filled out by Plaintiff on December 15, 2004, which lacks a receipt showing that it was ever actually processed, see

---

[2]The MJ also noted that, in an affidavit which Plaintiff executed on July 27, 2005 (before the instant complaint was filed on August 16, 2005), Plaintiff indicates that he was incarcerated at Coffee Correctional Facility at that time. Doc. no. 47, p. 11 (citing Pl.'s Ex. C).

2

Pl.'s Ex. A, and 2) an informal grievance form receipt showing that Plaintiff filed an informal grievance in May 2005.³ See Pl.'s Ex. B. Next, Plaintiff provides the affidavit of ex-corrections officer Tommy Cardell, who describes guard-inmate beatings, cover-ups, retaliatory beatings, and efforts to deter prisoners from filing grievances. Pl.'s Ex. E. According to Plaintiff, he should be afforded an extension of time to conduct discovery in order to depose Mr. Cardell and to uncover additional evidence of beatings at Rogers. See doc. no. 51. Interestingly, Plaintiff now also offers the conclusory argument that he should be deemed to have satisfied §1997e(a) because the alleged beatings were investigated by "Internal Affairs." Id. at 5-6. Finally, Plaintiff also argues that the MJ's credibility determination amounted to improper factfinding in contravention of Fed. R. Civ. P. 56. Id. at 16.

To begin, the Court acknowledges that prison officials may render administrative remedies "unavailable" by refusing to respond to a prisoner's grievance. See, e.g., Boyd v. Corr. Corp. of Am., 380 F.3d 989, 996 (6th Cir. 2004). Here, Plaintiff attempts to analogize the case *sub judice* to Clark v. Upton, CV 405-0210, doc. no. 8, pp. 9-10 (N.D. Ga. Feb. 22, 2006), in which the district court determined that the prisoner plaintiff's allegations in his complaint that prison officials refused to allow him to fill out a grievance form were sufficient to survive the defendants' Rule 12 motion. See doc. no. 51, pp. 13-15. Here, Plaintiff's attempt fails principally because, as Plaintiff himself has noted, the instant case is before the Court under Fed. R. Civ. P. 56, not Fed. R. Civ. P. 12. Thus, the issue is not

---

³There is nothing to indicate the content of the alleged May 2005 grievance, except that the receipt states that the grievance is in reference to an incident which occurred on "31 March, 2005." Pl.'s Ex. B.

3

whether Plaintiff's *allegations* are sufficient to survive a motion to dismiss, but whether there is an issue of material fact regarding whether administrative remedies were actually "available" to Plaintiff. The MJ concluded that Plaintiff had not come forward with sufficient evidence to bring the matter of the availability of administrative remedies into genuine dispute. The Court agrees.

Furthermore, the Court recently rejected Plaintiff's arguments in a strikingly similar case. See Priester v. Rich, CV 605-071, doc. no. 41 (S.D. Ga. Apr. 4, 2006), *appeal docketed*, No. 06-12290 (11th Cir. Apr. 21, 2006). In so doing, the undersigned explained:

> Congress enacted § 1997e(a) of the [PLRA] to *curtail* inmate litigation, not create an entire new layer of jury trials in the very overburdened court system that PLRA was meant to relieve. To hold that Priester is entitled to a jury trial on this preliminary issue [whether administrative remedies were "available"] would open the floodgates to even more litigation. Were this Court to hold otherwise, how many *convicted criminals*--in a legal world where civil-case originating perjury prosecutions are at best a rarity--would *not* then claim that their guards refused to avail them grievance forms or otherwise did something to excuse the exhaustion requirement? How many inmates like Priester, after pointing to the ensuing swearing match, would *not* then demand a jury trial on this *preliminary* issue, and thereby create a *second* litigation layer on top of the "merits" layer?
> . . . . [T]he Court concludes that . . . . exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues.

Id. at 6-7. Accordingly, the Court also rejects Plaintiff's argument in the instant case that he is entitled to jury determination of the facts regarding whether administrative remedies were "available" to him.

At any rate,

> [w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which

4

> is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," Anderson [v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)], and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). Similarly, the Supreme Court has explained that "discredited testimony" cannot be relied upon to resist summary judgment. See Anderson, 477 U.S. at 256-57. Thus, in the instant case, where Plaintiff relies heavily upon his own self-serving allegations, the Court properly considers whether a "reasonable juror would undertake the suspension of disbelief necessary to credit the allegations." Jeffreys, 426 F.3d at 555. Here, the Court agrees with the MJ's credibility findings and **ADOPTS** them as its own.

More importantly, the Court agrees with the MJ's conclusion that once a change in an inmate's conditions of confinement--*i.e.*, transfer to another prison--removes the prospect of retaliation for pursuing administrative remedies and renders the grievance process "available," an inmate's failure to exhaust can no longer be justified. Indeed, Priester stands for this very proposition. CV 605-071, doc. no. 35, pp. 8-9, *adopted by* doc. no. 41. Plaintiff was transferred to VSP in April 2005, and by July 2005 he was incarcerated at Coffee Correctional Facility. He did not file the instant complaint until August 16, 2005. Plaintiff has offered no evidence to support his claim that he was denied access to administrative remedies after his transfers.

Rather, Plaintiff offers the conclusory allegation that he could not pursue administrative remedies because of "fear of being beaten again at any prison to which he was transferred." Doc. no. 51, p. 18. Indeed, Plaintiff avers that he is the victim of a far-reaching

5

conspiracy which extends even to the Georgia Attorney General. Id. at 19. Yet, as the MJ noted, Defendants have submitted evidence showing that Plaintiff has been able to repeatedly access the administrative process since his transfer away from Rogers. In light of Plaintiff's demonstrated ability to avail himself of the administrative process since his transfer, the MJ correctly concluded that Plaintiff's unsupported argument that prison officials at prisons other than Rogers have colluded in an attempt to prevent him from exhausting administrative remedies is "farfetched." Doc. no. 47, p. 10. Rather, it is apparent that administrative remedies have been and continue to be available to Plaintiff.

Once administrative remedies became available, Plaintiff was obliged to exhaust them before filing suit. See Hilton v. Secretary for Dep't of Corr., No. 01-14148, 2005 WL 3802979, at *5 (11th Cir. Nov. 1, 2005). In Hilton, a state prisoner alleged that he could not exhaust administrative remedies because he was denied grievance forms while in "administrative confinement." Id. The Eleventh Circuit explained that "Hilton's contention . . . [did] not entitle him to relief because he fail[ed] to allege that he was unable to obtain these forms once he was released from confinement." Id. Thus, albeit in an unpublished opinion, the Eleventh Circuit has endorsed this Court's view that once the impediment to exhaustion is removed, an inmate's failure to utilize administrative remedies can no longer be justified. In sum, even assuming *arguendo* (which the Court does not) that Plaintiff was prevented from pursuing administrative remedies at Rogers, Plaintiff's failure to pursue an out-of-time grievance following his transfers to different prisons requires the Court to dismiss the instant suit under § 1997e(a).

Accordingly, the Report and Recommendation of the Magistrate Judge is **ADOPTED**

as the opinion of the Court. Therefore, Plaintiff's motion for extension of time for discovery (doc. no. 51) is **DENIED**, Defendants' motions for summary judgment (doc. nos. 3, 5, 7, 8, 10, 28) are **GRANTED**, Defendants' motion to stay (doc. no. 37) is **DENIED as MOOT**, and Plaintiff's case is **DISMISSED** without prejudice for failure to exhaust administrative remedies. Likewise, Defendant Byrd's lately filed motion to dismiss (doc. no. 49) is **DENIED** as **MOOT**. An appropriate **FINAL JUDGMENT** is entered in favor of Defendants, and this civil action is **CLOSED**.

SO ORDERED this 1st day of June, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA